

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

NGK SPARK PLUG CO., LTD.,

Defendant.

_____/

Criminal No.:   2:14-cr-20494-GCS

Filed:   October 8, 2014

Violation:      15 U.S.C. § 1

## PLEA AGREEMENT

The United States of America and NGK Spark Plug Co., Ltd. ("defendant"), a corporation organized and existing under the laws of Japan, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P.").

### RIGHTS OF DEFENDANT

1.      The defendant understands its rights:

     (a)      to be represented by an attorney;

     (b)      to be charged by Indictment;

     (c)      as a corporation organized and existing under the laws of Japan, to decline to accept service of the Summons in this case, and to contest the jurisdiction of the United States to prosecute this case against it in the United States District Court for the Eastern District of Michigan;

     (d)      to plead not guilty to any criminal charge brought against it;

(e)     to have a trial by jury, at which it would be presumed not guilty of the

charge and the United States would have to prove every essential element of the charged

offenses beyond a reasonable doubt for it to be found guilty;

(f)     to confront and cross-examine witnesses against it and to subpoena

witnesses in its defense at trial;

(g)     to appeal its conviction if it is found guilty; and

(h)     to appeal the imposition of the sentence against it.

## AGREEMENT TO PLEAD GUILTY
## AND WAIVE CERTAIN RIGHTS

2.      The defendant knowingly and voluntarily waives the rights set out in Paragraph

1(b)-(g) above.  The defendant also knowingly and voluntarily waives the right to file any

appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal

under 18 U.S.C. § 3742, that challenges the sentence imposed by the Court if that sentence is

consistent with or below the recommended sentence in Paragraph 9 of this Plea Agreement,

regardless of how the sentence is determined by the Court.  This agreement does not affect the

rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b)-(c).  Nothing in this

paragraph, however, will act as a bar to the defendant perfecting any legal remedies it may

otherwise have on appeal or collateral attack respecting claims of ineffective assistance of

counsel or prosecutorial misconduct.  The defendant agrees that there is currently no known

evidence of ineffective assistance of counsel or prosecutorial misconduct.  Pursuant to Fed. R.

Crim. P. 7(b), the defendant will waive indictment and plead guilty to a one-count Information to

be filed in the United States District Court for the Eastern District of Michigan.  The Information

will charge the defendant with participating in a combination and conspiracy to suppress and

2

eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix,

stabilize, and maintain the prices of, spark plugs, standard oxygen sensors, and air fuel ratio

sensors sold in the United States and elsewhere, from at least as early as January 2000 until at

least July 2011, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

3.     The defendant will plead guilty to the criminal charge described in Paragraph 2

above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to

the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 4 below.

## FACTUAL BASIS FOR OFFENSE CHARGED

4.     Had this case gone to trial, the United States would have presented evidence

sufficient to prove the following facts:

(a)     For purposes of this Plea Agreement, the "relevant period" is that period

from at least as early as January 2000 until at least July 2011.  During the relevant period,

the defendant was a corporation organized and existing under the laws of Japan, with its

principal place of business in Nagoya, Japan.  During the relevant period, the defendant

was a manufacturer of spark plugs, standard oxygen sensors, and air fuel ratio sensors,

employing more than 5,000 individuals, and was engaged in the sale of spark plugs,

standard oxygen sensors, and air fuel ratio sensors in the United States and elsewhere.

i.     For purposes of this plea agreement, a spark plug is an engine

component for delivering high electric voltage from the ignition system to the

combustion chamber of an internal combustion engine.  It ignites the compressed

fuel/air mixture with an electric spark while containing combustion pressure

within the engine.  Spark plugs have a basic manufacturing design composed

primarily of a shell, an insulator, a center electrode and an external (ground)

3

electrode.  Improvement of the ignitability or part longevity may be achieved by using an iridium or platinum alloy for the center electrode and a platinum alloy for the ground electrode resulting in platinum or iridium-platinum spark plugs.

ii.     For purposes of this plea agreement, oxygen sensors are located before and after the catalytic converter in the exhaust system to measure the amount of oxygen in the exhaust.  An oxygen sensor provides an input to the engine management computer or "engine control unit," which adjusts the ratio of air/fuel injected into the engine to compensate for excess air or excess fuel.  Standard oxygen sensors are "switching" sensors which essentially detect two states: rich or lean.  The standard oxygen sensor element is a ceramic thimble plated inside and out with electrodes.  These electrodes measure the difference in oxygen between the exhaust gas and the external air then generate an output voltage depending on the difference between the two measured values.

iii.    For purposes of this plea agreement, air fuel ratio sensors are "wideband" oxygen sensors located before the catalytic converter.  An air fuel ratio sensor is paired with a special interface circuit so it can produce an electric current corresponding to the actual proportion of exhaust gas oxygen concentration enabling more precise control of the air/fuel ratio injected into the engine.  This "wideband" sensor incorporates an electrochemical gas pump.  An electronic circuit containing a feedback loop controls the gas pump current so that the pump current directly indicates the oxygen content of the exhaust gas.

(b)     During the relevant period, the defendant, through its employees, including high-level personnel of the Defendant, participated in a conspiracy with other

4

persons and entities engaged in the manufacture and sale of spark plugs, standard oxygen sensors, and air fuel ratio sensors, the primary purpose of which was to rig bids for, and to fix, stabilize, and maintain the prices of, spark plugs, standard oxygen sensors, and air fuel ratio sensors sold in the United States and elsewhere.  In furtherance of the conspiracy, the defendant, through its employees, engaged in discussions and attended meetings with representatives of other manufacturers of spark plugs, standard oxygen sensors, and air fuel ratio sensors.  During such meetings and conversations, agreements were reached to allocate the supply of spark plugs, standard oxygen sensors, or air fuel ratio sensors, rig bids quoted to automobile manufacturers for the sale of spark plugs, standard oxygen sensors, or air fuel ratio sensors, and to fix, stabilize, and maintain the prices of spark plugs, standard oxygen sensors, or air fuel ratio sensors sold to DaimlerChrysler AG, Ford Motor Company, Fuji Heavy Industries ("Subaru"), Honda Motor Company, Ltd., General Motors Company, Nissan Motor Co., Ltd., Toyota Motor Corporation, and certain of their U.S. subsidiaries (collectively, the "automobile manufacturers"), in the United States and elsewhere.  During the relevant period, the defendant's relevant sales of spark plugs to Honda Motor Company, Ltd. and standard oxygen sensors to DaimlerChrysler AG and Toyota Motor Corporation in the United States and elsewhere totaled approximately $181 million.

(c)     During the relevant period, spark plugs, standard oxygen sensors, and air fuel ratio sensors sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of spark plugs, standard oxygen sensors, and air fuel ratio sensors, as well as payments for spark plugs, standard oxygen sensors, and air fuel ratio sensors, traveled in interstate commerce.  The business

5

activities of the defendant and its co-conspirators in connection with the production and sale of spark plugs, standard oxygen sensors, and air fuel ratio sensors that was the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

(d)     Acts in furtherance of this conspiracy were carried out within the Eastern District of Michigan, Southern Division.  Spark plugs and oxygen sensors that were the subject of the conspiracy were sold to DaimlerChrysler AG, Honda Motor Company, Ltd., Toyota Motor Corporation, and certain of their U.S. subsidiaries by the defendant's United States subsidiary, which is located in the Eastern District of Michigan.

(e)     During the relevant period, defendant engaged in related conduct made known to the government under the provisions set forth in U.S.S.G. §1B1.8, and therefore the United States agrees that this related conduct will not be used to increase the volume of affected commerce attributable to the defendant or in determining the defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. §1B1.8(b).

## ELEMENTS OF THE OFFENSE

5.     The elements of the charged offense are that:

(a)     the conspiracy described in the Information existed at or about the times alleged;

(b)     the defendant knowingly became a member of the conspiracy; and

(c)     the conspiracy described in the Information either substantially affected interstate commerce in goods or services or occurred within the flow of interstate and foreign commerce in goods and services.

6

## POSSIBLE MAXIMUM SENTENCE

6.     The defendant understands that the statutory maximum penalty which may be imposed against it upon conviction for a violation of Section One of the Sherman Antitrust Act is a fine in an amount equal to the greatest of:

(a)     $100 million (15 U.S.C. § 1);

(b)     twice the gross pecuniary gain the conspirators derived from the crime (18 U.S.C. § 3571(c) and (d)); or

(c)     twice the gross pecuniary loss caused to the victims of the crime by the conspirators (18 U.S.C. § 3571(c) and (d)).

7.     In addition, the defendant understands that:

(a)     pursuant to 18 U.S.C. § 3561(c)(1), the Court may impose a term of probation of at least one year, but not more than five years;

(b)     pursuant to U.S.S.G. §8B1.1 of the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") or 18 U.S.C. § 3563(b)(2) or 3663(a)(3), the Court may order it to pay restitution to the victims of the offenses charged; and

(c)     pursuant to 18 U.S.C. § 3013(a)(2)(B), the Court is required to order the defendant to pay a $400 special assessment upon conviction for each of the charged crimes.

## SENTENCING GUIDELINES

8.     The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing, unless that Manual provides for a greater

7

punishment than the Manual in effect on the last date of the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed. The parties agree there is no ex post facto issue under the November 1, 2013 Guidelines Manual. The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence. The defendant understands that the Guidelines determinations will be made by the Court by a preponderance of the evidence standard. The defendant understands that, although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a).

### SENTENCING AGREEMENT

9.      Pursuant to Fed. R. Crim. P. 11(c)(1)(C), and subject to the full, truthful, and continuing cooperation of the defendant and its subsidiary, as defined in Paragraph 13 of this Plea Agreement, the United States and the defendant agree that the appropriate disposition of this case is, and agree to recommend jointly that the Court impose, a sentence requiring the defendant to pay to the United States a criminal fine of $52.1 million, payable in full before the fifteenth (15th) day after the date of judgment, and no order of restitution ("the recommended sentence"). The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the U.S. Sentencing Commission in formulating the Sentencing Guidelines justifying a departure pursuant to U.S.S.G. §5K2.0. The parties agree not to seek at the sentencing hearing any sentence outside of the Guidelines range nor any Guidelines adjustment for any reason that is not set forth in this Plea Agreement. The

parties further agree that the recommended sentence set forth in this Plea Agreement is reasonable.

(a)     The defendant understands that the Court will order it to pay a $400 special assessment for each offense charged in the Information, pursuant to 18 U.S.C. § 3013(a)(2)(B), in addition to any fine imposed.

(b)     In light of the civil cases filed against the defendant, which potentially provide for a recovery of a multiple of actual damages, the recommended sentence does not include a restitution order for the offenses charged in the Information.

(c)     The United States and the defendant jointly submit that this Plea Agreement, together with the record that will be created by the United States and the defendant at the plea and sentencing hearings, and the further disclosure described in Paragraph 11, will provide sufficient information concerning the defendant, the crime charged in this case, and the defendant's role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553. The United States and defendant agree to request jointly that the Court accept the defendant's guilty plea and impose sentence on an expedited schedule as early as the date of arraignment, based upon the record provided by the defendant and the United States, under the provisions of Fed. R. Crim. P. 32(c)(1)(A)(ii), U.S.S.G. §6A1.1, and Rule 32.1(h) of the Criminal Local Rules. The Court's denial of the request to impose sentence on an expedited schedule will not void this Plea Agreement.

(d)     The United States may recommend that the Court order a term of probation. The United States and the defendant understand that the Court's decision regarding the imposition of probation will not void this Plea Agreement.

9

10.     Subject to the full, truthful and continuing cooperation of the defendant, as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in this case, the United States agrees that it will make a motion, pursuant to U.S.S.G. §8C4.1, for a downward departure from the Guidelines fine range and will request that the Court impose the recommended sentence set out in Paragraph 9 of this Plea Agreement because of the defendant's substantial assistance in the government's investigation and prosecutions of violations of federal criminal law in the spark plugs, standard oxygen sensors, and air fuel ratio sensors industries.

11.     Subject to the full, truthful and continuing cooperation of the defendant and its subsidiary as defined in Paragraph 13 of this Plea Agreement, and prior to sentencing in the case, the United States will fully advise the Court and Probation Office of the fact, manner, and extent of the defendant's and its subsidiary's cooperation, and their commitment to prospective cooperation with the United States' investigation and prosecutions, all material facts relating to the defendant's involvement in the charged offenses and all other relevant conduct.

12.     The United States and the defendant understand that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 9 of this Plea Agreement.

(a)     If the Court does not accept the recommended sentence, the United States and the defendant agree that this Plea Agreement, except for Paragraph 12(b) below, will be rendered void.

(b)     If the Court does not accept the recommended sentence, the defendant will be free to withdraw its guilty pleas (Fed. R. Crim. P. 11(c)(5) and (d)).  If the defendant withdraws its pleas of guilty, this Plea Agreement, the guilty pleas, and any statement made in the course of any proceedings under Fed. R. Crim. P. 11 regarding the guilty

10

pleas or this Plea Agreement, or made in the course of plea discussions with an attorney

for the government will not be admissible against the defendant in any criminal or civil

proceeding, except as otherwise provided in Fed. R. Evid. 410.  In addition, the defendant

agrees that, if it withdraws its guilty pleas pursuant to this subparagraph of the Plea

Agreement, the statute of limitations period for any offense referred to in Paragraph 15 of

this Plea Agreement will be tolled for the period between the date of the signing of the

Plea Agreement and the date the defendant withdrew its guilty pleas or for a period of

sixty (60) days after the date of the signing of the Plea Agreement, whichever period is

greater.

### DEFENDANT'S COOPERATION

13.     The defendant and its subsidiaries NGK Spark Plugs (U.S.A.) Holding, Inc., NGK

Spark Plugs (U.S.A.), Inc., and NTK Technologies, Inc. ("Subsidiaries") will cooperate fully and

truthfully with the United States in the prosecution of this case, the current federal investigation

of violations of federal antitrust and related criminal laws involving the manufacture or sale of

spark plugs, standard oxygen sensors, and air fuel ratio sensors; any other federal investigation

resulting therefrom; and any litigation or other proceedings arising or resulting from any such

investigation to which the United States is a party ("Federal Proceeding").  Federal Proceeding

includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding

regarding obstruction of, the making of a false statement or declaration in, the commission of

perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit

such offenses in, a Federal Proceeding.  The full, truthful, and continuing cooperation of the

defendant and its subsidiary will include, but not be limited to:

11

(a)     producing to the United States all documents, information, and other

materials, wherever located, not protected under attorney-client privilege or the work

product doctrine (and with translations into English), in the possession, custody, or

control of the defendant or Subsidiaries requested by the United States in connection with

any Federal Proceeding; and

(b)     using its best efforts to secure the full, truthful, and continuing

cooperation, as defined in Paragraph 14 of this Plea Agreement, of the current and former

directors, officers, and employees of the defendant or Subsidiaries, as may be requested

by the United States, but excluding the four (4) individuals listed in Attachment A filed

under seal, including making these persons available in the United States and at other

mutually agreed-upon locations, at the defendant's expense, for interviews and the

provision of testimony in grand jury, trial, and other judicial proceedings in connection

with any Federal Proceeding.  Current directors, officers, and employees are defined for

purposes of this Plea Agreement as individuals who are directors, officers, or employees

of the defendant or Subsidiaries as of the date of signature of this Plea Agreement.

14.     The full, truthful, and continuing cooperation of each person described in

Paragraph 13(b) above, will be subject to the procedures and protections of this paragraph, and

will include, but not be limited to:

(a)     producing in the United States and at other mutually agreed-upon

locations all documents, including claimed personal documents and other materials,

wherever located, not protected under attorney-client privilege or the work product

doctrine (and with translations into English), requested by attorneys and agents of the

United States in connection with any Federal Proceeding;

12

(b)     making himself or herself available for interviews in the United States and at other mutually agreed-upon locations, not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with any Federal Proceeding;

(c)     responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making false statements or declarations (18 U.S.C. § 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), or conspiracy to commit such offenses;

(d)     otherwise voluntarily providing the United States with any material or information not requested in (a) - (c) of this paragraph and not protected under attorney-client privilege or the work product doctrine that he or she may have that is related to any Federal Proceeding;

(e)     when called upon to do so by the United States in connection with any Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings in the United States fully, truthfully and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making false statements or declarations in grand jury or court proceedings (18 U.S.C. § 1623), contempt (18 U.S.C. §§ 401-402) and obstruction of justice (18 U.S.C. § 1503, *et seq.*); and

(f)     agreeing that, if the agreement not to prosecute him or her in this Plea Agreement is rendered void under Paragraph 16(c), the statute of limitations period for any Relevant Offense as defined in Paragraph 16(a) shall be tolled as to him or her for the period between the date of the signing of this Plea Agreement and six (6) months after the

date that the United States gave notice of its intent to void its obligations to that person

under the Plea Agreement.

## GOVERNMENT'S AGREEMENT

15.     Subject to the full, truthful, and continuing cooperation of the defendant and its

subsidiary, as defined in Paragraph 13 of this Plea Agreement, and upon the Court's acceptance

of the guilty pleas called for by this Plea Agreement and the imposition of the recommended

sentence, the United States agrees that it will not bring further criminal charges against the

defendant or Subsidiaries for any act or offense committed before the date of signature of this

Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the

manufacture or sale of spark plugs, standard oxygen sensors, or air fuel ratio sensors.  The

nonprosecution terms of this paragraph do not apply to (a) any acts of subornation of perjury (18

U.S.C. § 1622), making a false statement (18 U.S.C. § 1001), obstruction of justice (18 U.S.C. §

1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; (b) civil

matters of any kind; (c) any violation of the federal tax or securities laws or conspiracy to

commit such offenses; or (d) any crime of violence.

16.     The United States agrees to the following:

(a)     Upon the Court's acceptance of the guilty pleas called for by this Plea

Agreement and the imposition of the recommended sentence and subject to the

exceptions noted in Paragraph 16(c), the United States will not bring criminal charges

against any current or former director, officer or employee of the defendant or

Subsidiaries for any act or offense committed before the date of this Plea Agreement and

while that person was acting as a director, officer or employee of the defendant or its

subsidiary that was undertaken in furtherance of an antitrust conspiracy involving the sale

14

of spark plugs, standard oxygen sensors, or air fuel ratio sensors ("Relevant Offense"),

except that the protections granted in this paragraph shall not apply to the four (4)

individuals listed in Attachment A (filed under seal);

      (b)     Should the United States determine that any current or former director,

officer, or employee of the defendant or Subsidiaries may have information relevant to

any Federal Proceeding, the United States may request that person's cooperation under

the terms of this Plea Agreement by written request delivered to counsel for the

individual (with a copy to the undersigned counsel for the defendant) or, if the individual

is not known by the United States to be represented, to the undersigned counsel for the

defendant;

      (c)     If any person requested to provide cooperation under Paragraph 16(b) fails

to comply with his or her obligations under Paragraph 14, then the terms of this Plea

Agreement as they pertain to that person and the agreement not to prosecute that person

granted in this Plea Agreement will be rendered void, and the United States may

prosecute such person criminally for any federal crime of which the United States has

knowledge, including, but not limited to any Relevant Offense;

      (d)     Except as provided in Paragraph 16(e), information provided by a person

described in Paragraph 16(b) to the United States under the terms of this Plea Agreement

pertaining to any Relevant Offense, or any information directly or indirectly derived from

that information, may not be used against that person in a criminal case, except in a

prosecution for perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false

statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C.

§ 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses;

(e)     If any person who provides information to the United States under this Plea Agreement fails to comply fully with his or her obligations under Paragraph 14 of this Plea Agreement, the agreement in Paragraph 16(d) not to use that information or any information directly or indirectly derived from it against that person in a criminal case will be rendered void;

(f)     The nonprosecution terms of this paragraph do not apply to civil matters of any kind; any violation of the federal tax or securities laws or conspiracy to commit such offenses; any crime of violence; or perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. § 1503, et seq.), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; and

(g)     Documents provided under Paragraphs 13(a) and 14(a) will be deemed responsive to outstanding grand jury subpoenas issued to the defendant or its subsidiary.

17.     The United States agrees that when any person travels to the United States for interviews, grand jury appearances, or court appearances pursuant to this Plea Agreement, or for meetings with counsel in preparation therefore, the United States will take no action, based upon any Relevant Offense, to subject such person to arrest, detention or service of process, or to prevent such person from departing the United States.  This paragraph does not apply to an individual's commission of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making false statements or declarations (18 U.S.C. § 1001, 1623), obstruction of justice (18 U.S.C. § 1503, *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses.

16

18.     The defendant understands that it may be subject to administrative action by federal or state agencies other than the United States Department of Justice Antitrust Division, based upon the conviction resulting from this Plea Agreement, and that this Plea Agreement in no way controls whatever action, if any, other agencies may take.  However, the United States agrees that, if requested, it will advise the appropriate officials of any governmental agency considering such action of the fact, manner and extent of the cooperation of the defendant and its subsidiary as a matter for that agency to consider before determining what administrative action, if any, to take.  The defendant nevertheless affirms that it wants to plead guilty regardless of the suspension or debarment consequences of its plea.

### REPRESENTATION BY COUNSEL

19.     The defendant has been represented by counsel and is fully satisfied that its attorneys have provided competent legal representation.  The defendant has thoroughly reviewed this Plea Agreement and acknowledges that counsel has advised it of the nature of the charge, any possible defenses to the charge, and the nature and range of possible sentences.

### VOLUNTARY PLEA

20.     The defendant's decision to enter into this Plea Agreement and to tender pleas of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement and Attachment A (filed under seal).  The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

21.     The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant or Subsidiaries has failed to provide full, truthful and continuing cooperation, as defined in Paragraph 13 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant and Subsidiaries will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement.  The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant or Subsidiaries for any offense referred to in Paragraph 15 of this Plea Agreement, the statute of limitations period for such offense will be tolled for the period between the date of the signing of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

22.     The defendant understands and agrees that in any further prosecution of it or Subsidiaries resulting from the release of the United States from its obligations under this Plea Agreement, because of the defendant's or Subsidiaries' violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by it, Subsidiaries, or current directors, officers, or employees of it or Subsidiaries to attorneys or agents of the United States, federal grand juries or courts, and any leads derived therefrom, may be used against it or Subsidiaries.  In addition, the defendant unconditionally waives its right to challenge the use of

18

such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

## ENTIRETY OF AGREEMENT

23.    This Plea Agreement and Attachment A constitute the entire agreement between the United States and the defendant concerning the disposition of the criminal charges in this case.  This Plea Agreement cannot be modified except in writing, signed by the United States and the defendant.

24.    The undersigned is authorized to enter this Plea Agreement on behalf of the defendant as evidenced by the Resolution of the Board of Directors of the defendant attached to, and incorporated by reference in, this Plea Agreement.

25.    The undersigned attorneys for the United States have been authorized by the Attorney General of the United States to enter this Plea Agreement on behalf of the United States.

26.     A facsimile or PDF signature shall be deemed an original signature for the purpose of executing this Plea Agreement.  Multiple signature pages are authorized for the purpose of executing this Plea Agreement.


DATED: _August 18th, 2014_          Respectfully submitted,


BY: _____
Shinichi Odo
President and Chief Executive Officer
NGK Spark Plug Co., Ltd.

BY: _____            BY: _____
Andrew G. Fusco                             Diana Kane
Ellen Maxwell-Hoffman                       Natasha Smalky
Bowles Rice McDavid Graff &                 Eric Meiring
Love LLP
700 Hampton Center                          Trial Attorneys
Morgantown, WV 26505                        United States Department of Justice
Tel.:  (304) 285-2500                       Antitrust Division
Counsel for                                 450 Fifth Street, N.W., Suite 11300
NGK Spark Plug Co., Ltd.                     Washington, D.C. 20530
                                            Tel.: (202) 307-6694
                                            Fax: (202) 514-6525
                                            diana.kane2@usdoj.gov

BY: _____
John M. Majoras
Eric P. Enson
Jones Day LLP                               BY: _____
51 Louisiana Avenue, N.W.
Washington, D.C. 20001                      Shane Cralle
Tel.: (202) 879-3939                        Assistant United States Attorney
Counsel for                                 United States Attorney's Office
NGK Spark Plug Co., Ltd.                    Eastern District
                                            211 West Fort Street, Suite 2001
                                            Detroit, MI  48226


20

## NGK SPARK PLUG CO., LTD.
## BOARD RESOLUTIONS

At the Meeting of the Board of Directors of NGK SPARK PLUG CO., LTD. ("NGK") held on August 18, 2014, the Board:

RESOLVED, that the execution, delivery and performance of the Plea Agreement between the United States Department of Justice and NGK, in substantially the form presented to the Board, is hereby approved;

RESOLVED, that Mr. Shinichi Odo, President and Chief Executive Officer of NGK, is authorized, empowered and directed to execute and deliver the Plea Agreement in the name and on behalf of NGK; and

RESOLVED, that Mr. Shinji Shibagaki, Representative Director and Executive Vice President of NGK, is authorized, empowered and directed to represent NGK before any court or governmental agency in order to make statements and confirmations in accordance with the Plea Agreement, including entering a guilty plea on behalf of NGK.

### CERTIFICATE

I, Shinichi Odo, President and Chief Executive Officer of NGK SPARK PLUG CO., LTD, a company organized and existing under the laws of Japan, do hereby certify that the foregoing resolutions adopted by the Board of Directors of NGK SPARK PLUG CO., LTD., at a meeting of the Board of Directors held in Nagoya, Japan on August 18, 2014, are true, correct and complete and that said resolutions have not been amended, modified or repealed, and remain in full force and effect, as of the date hereof.

Signed in Nagoya, Japan this 18th day of August, 2014.

Shinichi Odo
President and Chief Executive Officer
NGK SPARK PLUG CO., LTD.